**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRACEY WARRICK,<br><br>               Plaintiff,<br><br>v.<br><br>NEW JERSEY OFFICE OF THE<br>ATTORNEY GENERAL *et al.*,<br><br>               Defendants. | Civil Action No. 20-14274 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

    This matter comes before the Court on Defendants State of New Jersey, New Jersey Office of the Attorney General, New Jersey Department of Law and Public Safety, Division of Human Resource Management, Mirella Bednar, Ann Sczerbowicz, Danielle Amari, and Valerie Stutesman's (collectively, "Defendants") Motion to Dismiss Plaintiff Tracey Warrick's ("Warrick") Amended Complaint. (ECF No. 31.) Warrick opposed (ECF No. 33-1), and Defendants replied (ECF No. 35). The Court has carefully reviewed the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants in-part and denies in-part Defendants' Motion.

I.  **BACKGROUND**[1]

In this employment discrimination case, a fifty-nine-year-old, African American employee alleges that her public employer discriminated against her by failing to promote her. (Am. Compl. ¶ 4, ECF No. 29.)[2] An employee of the State of New Jersey, Warrick began working in the New Jersey Office of the Attorney General's Department of Law and Public Safety (the "Department") in 2004 as a Personnel Assistant. (*Id.* ¶ 20.) According to Warrick's Amended Complaint, the Department employs a four-step promotion process for personnel assistants, ranging from the lower-tier "PA4" positions to the higher-tier "PA1" positions. (*See id.* ¶¶ 20, 35.) Employees with a "PA1" designation are eligible for promotions to manager positions. (*See id.* ¶ 35.) Warrick began her career with a PA4 designation and desired to be a manager. (*Id.* ¶¶ 20, 35.)

Warrick asserts, however, that the Department discriminated against her by making her promotions more challenging to attain. To start, the Department promoted Warrick to a PA2 position in February 2018 (backdated to July 2017). (*Id.* ¶ 55.) But the Amended Complaint alleges that the Department was years too late in that promotion, as "Defendants were aware of [Warrick's] interest in a promotion to a PA2 position" as far back as January 2016 and overlooked her. (*Id.* ¶¶ 52-55; *see also id.* ¶ 51 ("Around January 2016, [Warrick] asked Defendant Amari about getting promoted to the PA2 title.").)

Similarly, the Department promoted Warrick to a PA1 position in November 2020. (Am. Compl. ¶ 109.) Warrick's Amended Complaint asserts, however, that she could have been

---

[1] The Court accepts all well-pleaded factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

[2] Because the timing of events is important to the underlying dispute, the Court relies on the dates provided in the Amended Complaint.

promoted sooner absent the Department's discriminatory conduct. Promotions to PA1 positions require supervisory experience. (*Id.* ¶ 28 ("[T]o attain the PA1 position one must have supervisory duties and/or be a team leader."); *id.* ¶ 68 ("It is extremely important to have an assistant(s) in this [PA2] role since supervising others is a significant consideration to be promoted . . . .").) But the Department deprived Warrick of that experience by "remov[ing] [her] assistant" in March 2018 and assigning that assistant to a white employee—even though other white employees in Warrick's position always had an assistant. (Am. Compl. ¶¶ 57-58.) The Department further limited Warrick's opportunities by transferring her to another unit in September 2018 as a "Personnel Trainee," where she "received directives from titles under the PA2 position" and had less responsibilities. (*Id.* ¶ 67.) The Amended Complaint also alleges that while Warrick was in this position, she could not apply for a PA1 position, even though similarly situated younger, white employees could. (*Id.* ¶ 83 ("Defendants discriminated and retaliated against [Warrick] by making [her] ineligible to apply for a promotion to a PA1 position by not transferring [her] back to her previous position."); *id.* ¶ 84 ("At the same time, Defendants discriminated against [Warrick] . . . by providing opportunities for advancement to [her] Caucasian, younger colleagues with a lower title than [her].").)

Warrick was not silent regarding this treatment. She first complained in March 2018 by filing an internal Equal Employment Opportunity Complaint against her supervisors and a follow-up complaint in April 2018. (Am. Compl. ¶¶ 59-60.) Her complaints endured: the Amended Complaint alleges that following her September 2018 transfer, she repeatedly asked to be transferred back. (*Id.* ¶ 75; *see also id.* ¶ 94 ("Between March 1, 2019 to November 2019, Plaintiff repeatedly complained to Defendants of their discriminatory treatment towards her to no avail.").) In fact, on October 11, 2018, Warrick filed an internal complaint about her transfer. (Am. Compl.

3

¶ 76.) Although her supervisors attempted to accommodate her request, one of those supervisors (Defendant Stutesman) informed her in January 2019 that she would not be transferred back. (*Id.* ¶ 82.) That response invited another written complaint from Warrick in March 2019—which Stutesman "chacteriz[ed] . . . as insubordination." (*Id.* ¶¶ 92-93.)

The Amended Complaint also adds discrimination based on family leave to the mix. On June 11, 2018, Warrick went on family leave to care for her daughter. (*Id.* ¶ 62.) But one week later, the Department issued a written warning for "insubordination," "conduct unbecoming a public employee," and "other sufficient cause . . . [including] maintaining confidentiality within Human Resources." (*Id.* ¶ 63.) The Amended Complaint further alleges that Warrick appealed her written warning but ultimately lost that appeal in February 2019. (*Id.* ¶ 65.) It also alleges that similarly situated younger, white employees were given less severe reprimands for the same conduct. (*Id.* ¶¶ 63-64.)

On October 12, 2020, Warrick sued the Department, her supervisors, and other public entities based on this treatment. (*See generally* Compl., ECF No. 1.) Warrick later amended her Complaint, inviting the instant round of briefing. The Amended Complaint mixes and matches theories of discrimination and causes of action: (1) race-based discrimination, hostile work environment, and retaliation under 42 U.S.C. § 1981 (Counts One and Two); (2) race- and age-based discrimination under 42 U.S.C. § 1983 (Count Eleven); (3) retaliation and interference under the Family and Medical Leave Act ("FMLA") (Count Three); (4) race- and age-based discrimination, retaliation, aiding and abetting, racial disparate treatment, racial disparate impact, and hostile work environment under the New Jersey Law Against Discrimination ("NJLAD") (Counts Four through Nine); and (5) violations under the New Jersey Equal Pay Act ("NJEPA")

4

(Count Ten). (*See generally id.*) In addition, because the sequence of events is critical to this dispute, the Court sums it up below:

- **January 2016**: Warrick asks to be promoted to a PA2 position.

- **February 2018**: The Department promotes Warrick to a PA2 position.

- **March 2018**: The Department removes Warrick's assistant. Warrick files an internal Equal Employment Opportunity Complaint about this treatment.

- **April 2018**: Warrick files another internal complaint.

- **June 2018**: Warrick takes family leave. The Department issues Warrick a written warning one week after she takes leave. Warrick appeals that decision.

- **September 2018**: The Department transfers Warrick to another unit.

- **October 2018**: Warrick files another internal complaint about her transfer.

- **January 2019**: Stutesman informs Warrick that the Department will not transfer Warrick back to her old position.

- **February 2019**: The Department rejects Warrick's appeal of her June 2018 written warning.

- **March 2019**: Warrick files another internal complaint about her transfer.

- **August 2019**: Stutesman reprimands Warrick and characterizes the March 2019 complaint as insubordination.

- **October 2020**: Warrick files suit against Defendants.

- **November 2020**: The Department promotes Warrick to a PA1 position.

(*See generally id.*)

## II.   LEGAL STANDARD

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v.*

*George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

In addition, although Rule 12(b) does not explicitly permit the assertion of a statute of limitations defense by a motion to dismiss, the so-called "Third Circuit Rule" allows a defendant to assert a limitations defense in a Rule 12(b)(6) motion "if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)).

### III.  DISCUSSION

Defendants seek to dismiss most of Warrick's Amended Complaint, arguing that most of the causes of actions are time-barred or inadequately pled. The Court begins with Warrick's federal

causes of action under § 1981, § 1983, and the FMLA, and then turns to the remaining state actions under the NJLAD and NJEPA.

### A.    § 1981

Warrick's Amended Complaint asserts § 1981 claims under theories of hostile work environment, retaliation, and race-based disparate-treatment discrimination. (*See* Am. Compl. ¶¶ 145-60.)[3] Defendants counter that the Amended Complaint fails to allege that race was a but-for cause for the discrimination and hostile work environment theories and that it fails to allege a viable adverse employment action for the discrimination and retaliation theories. (Defs.' Moving Br. 8-15, ECF No. 31-1.) The Court considers each argument in turn.

To start, but-for causation is a necessary element for § 1981 race-based discrimination and racially hostile work environment claims. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) ("To prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."). The causation question is whether the Amended Complaint alleges that Warrick would have been promoted sooner but for her race. It does. (*E.g.*, Am. Compl. ¶ 37 ("Defendants overlook African American well-qualified employees for promotions and instead give them to lesser qualified Caucasian employees."); *id.* ¶ 39 ("[T]here are no minorities in Defendants' administrative staff, Deputy Directors, Counsels to the Director, Chief of Staff or Deputy Chief of Staff."); *id.* ¶ 68 ("Defendants reassigned Kristina, Plaintiff's Caucasian, younger than forty (40) years old, former

---

[3] Although Warrick's Amended Complaint does not specify whether she is alleging disparate-impact or disparate-treatment discrimination, the Court assumes Warrick proceeds under a disparate-treatment theory. *See Castleberry v. STI Grp.*, 863 F.3d 259, 267 (3d Cir. 2017) ("[D]isparate impact is unavailable under § 1981. The Supreme Court has rejected 'that a violation of § 1981 could be made out by proof of disparate impact.'" (quoting *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 383 n.8 (1982))).

assistant, to Plaintiff's previous position and Defendants gave Kristina two assistants. Whereas Defendants previously removed Plaintiff's assistant while in that same position."); *id.* ¶ 83 ("Defendants discriminated and retaliated against Plaintiff by making Plaintiff ineligible to apply for a promotion to a PA1 position by not transferring Plaintiff back to her previous position."); *id.* ¶ 97 ("Defendants provided Plaintiff's similarly situated Caucasian, younger[] [c]olleagues with the necessary supervisory experience to be promoted to the PA1 position, while Defendants did not afford Plaintiff the same opportunities, which caused Plaintiff to fail the DPF44s application exam twice . . . .").)

Defendants counter that the Amended Complaint fails to plead but-for causation because it alleges other discriminatory causes for their failure to promote Warrick, such as her age and her taking family leave. (*See* Defs.' Br. 14-15.) But that argument misconstrues the concept of but-for cause. Adverse employment actions can have multiple but-for causes. *Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020). That means that "a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision." *Id.* Said another way, Defendants can attempt to disprove but-for cause by pointing to *non-discriminatory* reasons for their failure to promote Warrick; those reasons would undercut Warrick's allegations that racial discrimination caused her injury. *See Rubert v. King*, No. 19-2781, 2020 WL 5751513, at *7 (S.D.N.Y. Sept. 25, 2020) ("[W]here 'but-for' causation is required, a plaintiff 'must establish that the employer's stated non-discriminatory reason is either false or inadequate to support the adverse employment action.'" (second quoting *Naumovski v. Norris*, 934 F.3d 200, 215 (2d Cir. 2019)). What is improper, however, is pinpointing other discriminatory reasons to disprove any particular discriminatory cause. Those other reasons shed no light on whether the injury resulted from the alleged discrimination—rather, they show that multiple unlawful causes led to the adverse

employment action. *Cf. Bostock*, 140 S. Ct. at 1739 (analogizing that two but-for causes exist when driver causes injury by running red light and failing to use turn signal).[4]

Turning to Defendants' second argument, Defendants argue that Warrick's § 1981 theories of disparate-treatment discrimination and retaliation must founder because she fails to allege an adverse employment action—especially one that is within the two-year statute-of-limitations period. (*See* Defs.' Br. 13-15; Defs.' Reply Br. at *4-6, ECF No. 35.)[5] This argument fails to bear fruit. For one, the statute of limitations for Warrick's § 1981 claim is four years, not two. *See Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 382 (2004) (holding that § 1981(b) claims fall under the four-year federal catchall statute of limitations in 28 U.S.C. § 1658). That is because Warrick's Amended Complaint alleges conduct that occurred after she signed her employment contract, thereby stating a claim under § 1981(b). *See Ackah v. Pa. Dep't of Corr.*, No. 08-376, 2008 WL 11366478, at *9 (M.D. Pa. Nov. 14, 2008) ("[The plaintiff's] claims of discriminatory evaluations, denial of training and promotion, and wrongful termination arise out of [§ 1981(b)], and therefore are subject to the four-year statute of limitations.").

Warrick's Amended Complaint unquestionably alleges an adverse employment action within the four-year limitations period. For example, it alleges that in September 2018, Defendants transferred Warrick to a lesser role where she took orders from her subordinates, had less duties and responsibilities, and was unable to apply for a promotion. (Am. Compl. ¶¶ 67, 83; *see also Greer v. Mondelez Glob., Inc.*, 590 F. App'x 170, 173 (3d Cir. 2014) (noting that adverse employment action can be shown by "reassignment with significantly different responsibilities")

---

[4] Indeed, Defendants' argument leads to the illogical result that plaintiffs could not maintain a § 1981 claim when an employer discriminated against an employee based on race and some other protected characteristic.

[5] Pin-cites preceded by asterisks refer to the pagination atop the CM/ECF header.

(citation omitted).) At this stage, those allegations are sufficient to plead an adverse employment action. Indeed, the crucial question before the Court on a motion to dismiss is not whether Warrick has made out a prima facie employment discrimination case but whether she has alleged "sufficient facts to raise a reasonable expectation that discovery will uncover proof of [her] claims." *Shropshire v. Gallaway*, 855 F. App'x 853, 855 (3d Cir. 2021) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)).

**B.    § 1983**

The Court next addresses the Amended Complaint's § 1983 claim. For this claim, Defendants request dismissal to the extent the cause of action relies on conduct occurring before October 12, 2018. (Defs.' Br. 6-8.) Warrick does not dispute the substance of Defendants' statute-of-limitations argument and instead proffers that she "is entitled to rely on discrete acts that occurred more than two years before Plaintiff filed her Complaint on October 12, 2020 for evidentiary purposes when they are relevant to a material issue in dispute." (Pl.'s Opp'n Br. 3, ECF No. 33-1.) Defendants are correct that a two-year statute of limitations governs § 1983 claims. *See Vickers v. Childs*, 530 F. App'x 104, 105 (3d Cir. 2013) (per curiam) ("[A] § 1983 claim arising in New Jersey will be time-barred if more than two years has passed since its accrual."). Thus, Warrick must allege the elements of her § 1983 claim within two years of filing suit—October 12, 2018.

Whether she can is a closer call. To show race-based discrimination, Warrick's Amended Complaint must allege that she "received different treatment from that received by other individuals similarly situated" and that "the different treatment was improperly motivated by discrimination or punishment for exercising a constitutional right." *Zappan v. Pa. Bd. of Prob. & Parole*, 152 F. App'x 211, 219 (3d Cir. 2005) (citations omitted). As to that motive, "[c]laims for an equal protection violation based on race and national origin under § 1983, like a disparate

10

treatment claim under Title VII, require a plaintiff to prove intentional discrimination." *Ugorji v. N.J. Env't Infrastructure Tr.*, 529 F. App'x 145, 150 (3d Cir. 2013) (citations omitted). That said, as stated earlier, at this stage, the Court does not concern itself with whether Warrick's Amended Complaint can prove intentional discrimination but rather whether its allegations are reasonably likely to lead to proof of Warrick's claims through discovery. *See Shropshire*, 855 F. App'x at 855. Applying that standard, the Court concludes that the Amended Complaint alleges enough within the two years of Warrick filing suit to survive dismissal. For example, it maintains that Warrick was never promoted during the limitations period. At the same time, it alleges several examples of Defendants promoting similarly situated, younger, white colleagues. A sampling:

> 100. Notably, around July 25, 2015, Defendants promoted Stacey Carter, Plaintiff's similarly situated Caucasian, younger (under forty years old) colleague, from a PA3 to a PA1, in one year.
>
> 101. Within three years, and around, January 6, 2018, Defendants promoted Stacy Carter from a PA1 to Manager 2.
>
> 102. Around July 25, 2015, Defendants promoted Defendant AMARI, Plaintiff's similarly[] situated Caucasian, younger colleague from a PA3 to a PA1 in less than two years.
>
> 103. In less than three (3) years and around January 6, 2018, Defendants promoted Defendant AMARI from a PA1 to Manager 2.
>
> 104. Around April 14, 2017 and in less than three (3) years, Defendants promoted Kathleen Dollard, Plaintiff's similarly[] situated Caucasian, younger colleague from a PA3 to a PA1.
>
> 105. Around June 23, 2018 and in less than three (3) years, Defendants promoted Laura Taylor, Plaintiff's similarly situated Caucasian, younger colleague.
>
> 106. Around April 26, 2019 and within four (4) years, Defendants promoted Plaintiff's similarly situated Caucasian, younger colleague from a PA3 to a PA1.
>
> 107. Around September 14, 2018 and within two (2) years, Defendants promoted Jessica Stillitano, Plaintiff's similarly situated

11

> Caucasian, younger (under forty years old) colleague from a PA3 to a PA1.
>
> 108. Comparatively, and quite strikingly, around September 15, 2018 and within twenty-one (21) years, Defendants promoted Plaintiff's African American colleague, Connie Wilson from a PA3 to a PA1.

(Am. Compl. ¶¶ 100-08.) At this stage, these allegations are reasonably likely to lead to proof of Warrick's claims and therefore are sufficient to state a § 1983 discrimination claim.

Defendants resist this conclusion by arguing that most of the Amended Complaint's conduct occurred outside the limitations period. But, as the U.S. Supreme Court has noted, untimely acts of discrimination "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977). That is precisely what the Amended Complaint alleges here: Defendants' promotion and decision-making practices have led to disparate treatment whereby younger, white employees are able to attain promotions faster than their older, African American counterparts. As *relevant background evidence*, the Amended Complaint alleges numerous examples of, for instance, Defendants promoting white colleagues within four years and promoting African American employees within twenty-one years. *Cf. Stewart v. Rutgers*, 120 F.3d 426, 433 (3d Cir. 1997) ("While the district court was correct in finding that any discrimination claim based on [the plaintiff's] 1992-93 tenure denial is time-barred, we reject the notion that the events surrounding that denial are not relevant evidence which [the plaintiff] could use at trial.").

### C.    FMLA

Next up is the Amended Complaint's FMLA claim. The Amended Complaint puts forth two theories of liability under the FMLA: interference with benefits and retaliation. In opposition, Warrick only defends the latter. (*See* Pl.'s Opp'n Br. 3-7.) The Court accordingly dismisses the FMLA interference claim. *See Lawlor v. ESPN Scouts, LLC*, No. 10-5886, 2011 WL 675215, at

12

\*2 (D.N.J. Feb. 16, 2011) ("Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant." (citations omitted)).

Regarding the remaining retaliation theory, Defendants recycle their arguments from above—that the statute of limitations bars the claim and that no adverse employment action exists. Starting with the statute-of-limitations defense, the Amended Complaint must unequivocally give rise to that defense. That is especially so because motions to dismiss are crude instruments for fact-intensive affirmative defenses like statute-of-limitations defenses. *See Hull v. Glob. Digit. Sols., Inc.*, No. 16-5153, 2017 WL 6493148, at \*8 (D.N.J. Dec. 19, 2017) (reasoning that statute-of-limitations defenses "are typically fact intensive, and thus, courts are reluctant to dismiss a complaint as untimely prior to discovery" (citations omitted)). Notably, "[a]t the motion to dismiss stage . . . , the court considers applicable tolling doctrines, and a plaintiff is not required to plead around an affirmative defense in the complaint." *Adie v. Stewart*, No. 20-6200, 2020 WL 7488897, at \*3 (D.N.J. Dec. 21, 2020). At bottom then, when even a possibility of tolling applies, a complaint will not give rise to a statute-of-limitations defense that is ripe for resolution on a motion to dismiss.

These principles animate this case. The statute of limitations for non-willful violations of the FMLA (like here) is two years. *See Clark v. Phila. Hous. Auth.*, 701 F. App'x 113, 115 n.1 (3d Cir. 2017) (citing 29 U.S.C. § 2617(c)(1)). Thus, Warrick's FMLA claim must accrue on or after October 12, 2018. On its face, the Amended Complaint does not allege that the events occurred during the limitations period because Warrick took family leave and was later reprimanded for taking that leave in June 2018. (Am. Compl. ¶¶ 62-63.) The Amended Complaint, however, also alleges that Warrick internally appealed her write-up and that the appellate body did not issue a

decision until February 2019. (*Id.* ¶ 65.) Based on those allegations, the Court will not dismiss the Amended Complaint's FMLA claim as time-barred. Taking all inferences in favor of Warrick (as the Court must at this stage), the Court cannot say that Warrick would have known to sue Defendants for an FMLA violation before an internal appellate body reached a decision on her write-up. To be sure, had Warrick so sued and the appellate body returned an outcome in her favor, Warrick's FMLA claim would have been moot. That outcome implicates the possibility that the Court could toll Warrick's FMLA claim through February 2019. Because that possibility exists, the more prudent course is to wait for the benefit of discovery for Defendants to cultivate this statute-of-limitations defense. *See Adie*, 2020 WL 748897, at *3 ("Because [the plaintiff] did not plead facts that unequivocally show that tolling doctrines do not apply . . . , the complaint survives the motion to dismiss on statute of limitations grounds.").

The Court similarly rejects Defendants' argument that the write-up is an insufficiently adverse employment action. True, written warnings by themselves generally do not rise to the level of adverse employment actions under the FMLA. *See Clark*, 701 F. App'x at 117. But here, the written warning is not by itself; it had supporting characters—namely, Defendants' failure to promote Warrick and Warrick's eventual transfer to another department. *See* 29 C.F.R. § 825.220(c) (2022) ("[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions . . . ."); *Wright v. City of Topeka*, 547 F. App'x 861, 863 n.1 (10th Cir. 2013) (noting that failure to promote was adverse employment action for FMLA retaliation claim). Because the Amended Complaint alleges these critical facts, the Court can reasonably infer that Defendants "adversely affected the terms or conditions of her employment" by failing to promote her or by transferring her. *See Clark*, 701 F.

App'x at 117. As to whether discovery will bear that out is a question for another day. At this stage, the Amended Complaint has alleged enough for this claim to survive dismissal.

### D.     NJLAD

Turning next to the state law claims, the Amended Complaint alleges six claims under the NJLAD, each under a different theory. The list includes race- and age-based discrimination, retaliation, aiding and abetting, racial disparate treatment, racial disparate impact, and hostile work environment. Defendants assail all but the NJLAD hostile work environment claim on similar grounds as above—that is, that the Amended Complaint fails to allege a viable adverse employment action within the statute-of-limitations period. Because the disparate impact claim warrants a separate analysis, the Court begins by analyzing the Amended Complaint's discrimination, retaliation, aiding and abetting, and disparate treatment theories.

#### 1.     Discrimination, Retaliation, Aiding and Abetting, and Disparate Treatment

Starting with the statute of limitations, New Jersey uses the same analysis for NJLAD claims as federal courts use for § 1983 claims: the statute of limitations is two years and conduct outside the limitations period is "background evidence in support of a timely claim." *Roa v. Roa*, 985 A.2d 1225, 1231-32 (N.J. 2010) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). Because the statute of limitations is two years, Warrick must allege a discrete discriminatory act within two years of her filing her original complaint, i.e., by October 12, 2018. *See id.* That means that any of the discrete acts occurring before that date are not actionable. *See id.* at 1231 ("[F]or limitations purposes, a discrete retaliatory or discriminatory act occur[s] on the day that it happen[s]." (second and third alterations in original) (internal quotation marks omitted) (quoting *Morgan*, 536 U.S. at 110)). So, the following actions cannot serve as discrete acts for the NJLAD claim: Warrick's untimely promotion to the PA2 position, any pre-October denials of

15

promotion to a PA1 position, Defendants' removal of Warrick's assistant, and Warrick's June 2018 warning.

What is actionable (at least at this stage) are Defendants' post-October denials of Warrick's promotion to a PA1 position. Those discrete acts serve as an adverse employment action for the discrimination, retaliation, aiding and abetting, and disparate treatment theories under the NJLAD. *See, e.g.*, N.J. Stat. Ann. § 10:5-12(a), (d), (e); *Forchion v. Sears Outlet Stores, LLC*, No. 11-5837, 2014 WL 4259431, at *3-5 (D.N.J. Aug. 27, 2014) (discrimination); *Shock v. E.I. Du Pont De Nemours & Co.*, No. 16-3410, 2017 WL 3122656, at *4-5 (D.N.J. July 21, 2017) (retaliation); *Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 289 (3d Cir. 2006) (aiding and abetting); *White v. Smiths Detection, Inc.*, No. 10-4078, 2013 WL 1845072, at *13 (D.N.J. Apr. 30, 2013) (disparate treatment). Indeed, the Amended Complaint appears to allege at least one concrete instance of a 2019 denial of a promotion. (*See* Am. Compl. ¶ 97 (alleging that Warrick failed a promotion test in late 2019).) Taking all inferences in favor of Warrick, the Amended Complaint alleges enough for these four NJLAD claims to survive.[6]

### 2. Disparate Impact

The disparate impact claim merits a different analysis. Defendants assert that the two-year statute of limitations bars this claim and that the Amended Complaint fails to adequately allege a facially neutral policy that disproportionately promotes non-African American employees. (*See* Defs.' Br. 7-8, 17-19.) To allege a disparate impact claim, the Amended Complaint must (1) "identify the specific practice(s) alleged to have created a disparate impact," and (2) "show that this practice caused observable statistical differences affecting the protected class." *Williams v.*

---

[6] Defendants counter that Warrick's transfer and subsequent transfer denial cannot serve as adverse employment actions. (Defs.' Br. 11-13.) But the Court need not reach this argument because Warrick's Amended Complaint has already alleged a timely adverse employment action.

*Township of Lakewood*, No. 17-11401, 2020 WL 7391009, at *18 (D.N.J. Dec. 15, 2020) (quoting *Petruska v. Reckitt Benckiser, LLC*, No. 14-3663, 2015 WL 1421908, at *6 (D.N.J. Mar. 26, 2015)). Some confusion arises regarding the two-year statute of limitations here because these elements do not easily lend themselves to a discrete act. That is particularly true in this case where the Amended Complaint alleges an ongoing discriminatory practice and does not clearly allege that Defendants applied the practice in the limitations period. Guiding the Court, the Supreme Court has clarified that every "use" of an employment practice that causes a disparate impact constitutes a separate violation under Title VII of the Civil Rights Acts. *Lewis v. City of Chicago*, 560 U.S. 205, 213 (2010); *accord Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 158 (2d Cir. 2012).[7] The Supreme Court has also instructed that a "failure to promote" constitutes a "separate actionable unlawful employment practice." *Morgan*, 536 U.S. at 114. Taking these two together, to assert a timely disparate impact claim, Warrick must allege that Defendants' discriminatory policy caused Defendants to deny her a promotion sometime on or after October 12, 2018.

The Amended Complaint meets this challenge. It alleges an arbitrary merits-based system that houses "loopholes" that enable Defendants to fast-track younger, white applicants for promotions while leaving similarly situated older, African American applicants behind. (Am. Compl. ¶ 23; *see also id.* ¶ 26 ("Defendants also have the ability to arbitrarily and discriminatorily bypass the merits-based exam for certain employees and instead promote based on education and experience.").) It further alleges that Warrick may have fallen prey to those loopholes by failing a promotional exam in late 2019—well within the limitations period. (*Id.* ¶ 97 (alleging that Warrick

---

[7] "[C]ourts employ the same framework and standard of review when analyzing claims under Title VII and NJLAD." *Prioli v. County of Ocean*, No. 18-256, 2021 WL 4473159, at *18 (D.N.J. Sept. 30, 2021) (citation omitted); *see also Abramson v. William Paterson Coll.*, 260 F.3d 265, 282 n.13 (3d Cir. 2001) ("Under the NJLAD and Title VII, the analysis is essentially the same.").

failed a promotion test in late 2019).) To cap it off, the Amended Complaint also alleges several examples of the discriminatory policy at work, as recounted earlier. (*See id.* ¶¶ 100-08.) Although Warrick will eventually need to prove up these allegations through statistical evidence, she "need not allege statistical support to survive a motion to dismiss." *Williams v. Compassionate Care Hospice*, No. 16-2095, 2016 WL 4149987, at *5 (D.N.J. Aug. 3, 2016) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002)).[8]

### E. NJEPA

Turning finally to Warrick's NJEPA claim, the parties agree that any conduct before July 1, 2018, is non-actionable under the statute. (*See* Pl.'s Opp'n Br. 2 n.1 ("Plaintiff does not oppose Defendant's [sic] argument that Plaintiff's NJEPA claim must be limited from July 1, 2018 to present.").) The Court accordingly grants Defendants' Motion limiting Warrick's NJEPA claim to conduct occurring on and after July 1, 2018.

## IV. CONCLUSION

The Court grants in-part and denies in-part Defendants' Motion. An order consistent with this Memorandum Opinion will follow.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[8] Defendants ignore these allegations and instead assert that Warrick "has failed to allege any facts whatsoever to establish either prong of the prima facie case of disparate impact." (Defs.' Br. 18.) The Court struggles to see what Defendants are getting at as the core of Warrick's Amended Complaint is that Defendants' promotion polices have caused racially disparate outcomes.